Filed 4/7/16  P. v. Navarro CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARIA MARTHA NAVARRO,<br><br>    Defendant and Appellant. | G051065<br><br>(Super. Ct. No. 14WF1783)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Dan McNerney, Judge.  Affirmed.

John N. Aquilina, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor, and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

Maria Martha Navarro was convicted by a jury of carjacking and receiving stolen property. The court suspended imposition of sentence and placed her on probation for three years.

Navarro challenges the sufficiency of the evidence to support the carjacking conviction, and the adequacy of the court's carjacking instructions. We reject both challenges and affirm the judgment.

**FACTS**

In April 2014, Navarro took Chieu Crowe's Jeep Patriot from a Sam's Club parking lot. Police arrested Navarro driving Crowe's Jeep the same day. At the time, Navarro had a man's wallet and Frank Moreno's driver's license with her. When police contacted Moreno, he had the key to a stolen 2005 Honda CRV in his pants pocket.[1]

Video surveillance footage from outside Sam's Club, showed Navarro and Moreno drove the stolen Honda CRV into the Sam's Club parking lot, parked, and went into the store. Video footage from inside the store showed them pushing a shopping cart.

Crowe arrived in her Jeep a few minutes later. She also parked and entered the store. On the way in, Crowe grabbed a shopping cart, and she put her wallet and car keys on the cart shelf. As Crowe shopped, she walked the aisles and chatted on the phone. At one point, she parked her shopping cart near a store display, which partially blocked the camera's view, and then walked away from her cart and out of frame. She had her phone in one hand and wallet in the other.

About four minutes later, Navarro and Moreno pushed their shopping cart next to Crowe's cart. Moreno walked away while Navarro transferred a couple of items from her cart to Crowe's cart before abandoning her cart and rejoining Moreno. A few minutes later, Moreno and Crowe left the store apparently empty handed.

---

[1] The prosecution joined Moreno and Navarro's cases for trial, but Moreno is not a party to this appeal.

When Crowe returned to her cart a few minutes later, she realized her Jeep keys were gone. Crowe reported the incident to store employees. She walked outside to check on her Jeep and then back inside to see if anyone returned her keys. She was standing near the store entrance when she heard a "beep" and realized someone had started her Jeep.

Crowe testified she ran to her Jeep as Navarro backed out of the parking space. Crowe got close enough to grab the driver's door handle with her left hand. Crowe said she screamed "This is my car. What are you doing in my car[,]" as she opened the driver's door. Navarro then looked at her, grabbed the door, slammed it closed "with both . . . hands," and accelerated forward.

Crowe claimed she was shocked, afraid, and felt helpless when Navarro closed the car door and accelerated away. As she testified, "I felt threatened because she could have ran over my foot or something. She just sped away." Crowe said she realized the incident took mere seconds, but she testified "it felt like a long time to me."

The surveillance footage is grainy and taken from an unfortunate angle. The driver's side of the Jeep is never fully visible, and Navarro backs out of frame at the point Crowe first comes into contact with her Jeep. Nevertheless, Crowe can be seen running with her Jeep as Navarro accelerates forward. The visible portion of the driver's door closes, and Crowe's left arm flies out and up. However, the camera angle and distance make it impossible to clearly see the driver's door.

Navarro did not testify. In closing, Navarro's attorney argued, "Now, in that video, it contradicts Ms. Crowe's testimony. You see in one motion the car pull out of the spot, Ms. Crowe go up to the car where Ms. Navarro is and within two to three seconds, you will have the video and be able to count how long, just a brief amount of time, in one motion the car drives out and the door is still open. You can see that in the video. [¶] There's no evidence in the video that the door was slammed shut or pulled from the hands of Ms. Crowe. The door doesn't shut at all. Even if the door shut, that's

3

what it takes to steal a car. You have to put your foot on the gas, shut the door and drive away, even if you don't believe the video. That's what it takes to steal a car. It [carjacking] has to be more than that. The force can't be incidental. It can't be incidental force or the force needed just to carry away the car. And that's all that there is here. The car is moving the whole time."

## DISCUSSION

1. *Sufficiency of the Evidence*

As below, Navarro admits stealing Crowe's Jeep, but she denies using force or fear in the process. The applicable standard of review requires this court to "consider the evidence in a light most favorable to the judgment and presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. . . . The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt. [Citations.]" (*People v. Mincey* (1992) 2 Cal.4th 408, 432.) We do not reweigh the evidence, resolve factual conflicts, or determine witness credibility. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

"A conviction of carjacking requires proof that (1) the defendant took a vehicle that was not his or hers (2) from the immediate presence of a person who possessed the vehicle or was a passenger in the vehicle (3) against that person's will (4) by using force or fear and (5) with the intent of temporarily or permanently depriving the person of possession of the vehicle." (*People v. Magallanes* (2009) 173 Cal.App.4th 529, 534 (*Magallanes*); Pen. Code, § 215, subd. (a).)

Two things defeat Navarro's challenge to the sufficiency of the force or fear evidence. First, her use of force argument rests on a false factual premise and patent disregard for the standard of review. No matter how many times Navarro maintains otherwise, the parking lot surveillance footage, such as it is, does not directly contradict Crowe's testimony. As noted, the camera angle and film quality prevent a clear view of the driver's door at the critical moment. But the surveillance footage is essentially

4

neutral, neither supporting, nor undermining, either version of events. It shows the driver's door closes as the Jeep accelerates. However, Crowe's arm swings out in a manner consistent with her having the driver's door handle ripped from her hands.

Moreover, Crowe testified Navarro grabbed the driver's door with both hands, wrested it from Crowe's control, and slammed it shut while she accelerated away. Crowe's testimony, if believed, is sufficient to sustain the verdict. (*People v. Barnes* (1986) 42 Cal.3d 284, 303-304, 306 [absent inherent improbability or apparent falsity, the testimony of one witness, if believed, is sufficient to sustain a conviction].) So there is substantial evidence Navarro used force to take or keep possession of the Jeep.

Second, even assuming there were insufficient evidence Navarro used force, the crime of carjacking is committed when *either* "force or fear" is present. (*Magallanes, supra,* 173 Cal.App.4th p. 534.) Fear has both a subjective and objective component (*People v. Iniguez* (1994) 7 Cal.4th 847, 857-858; *People v. Brew* (1991) 2 Cal.App.4th 99, 104), and express threats are not necessary to prove fear. (*Magallanes,* at p. 534.) In fact, a defendant's brazen behavior can suffice to create a reasonable sense of fear in the victim. (*Ibid.*, citing *People v. Flynn* (2000) 77 Cal.App.4th 766, 771-773.)

Here, according to Crowe's testimony, she ran after her Jeep, grabbed the driver's door, and repeatedly yelled at Navarro. But, Navarro did not stop. Instead, she looked at Crowe, grabbed the door from Crowe's hands, and accelerated. Crowe testified she was shocked and afraid of injury when Navarro drove away, because of Crowe's close proximity to a moving car. Given the circumstances, Crowe's subjective fear was objectively reasonable, and her testimony constitutes substantial evidence Navarro used fear to take or keep possession of the Jeep. Thus, the crime she committed was carjacking. (*People v. O'Neal* (1997) 56 Cal.App.4th 1126, 1131 (*O'Neal*).)

We find *O'Neal* particularly instructive. In *O'Neal*, the victim parked his truck in the driveway, left it unlocked, and put the keys under a floor mat. (*O'Neil, supra*, 56 Cal.App.4th p. 1128.) The next morning, the victim was awakened by the

sound of a starting truck engine. (*Ibid.*) The victim ran out of his home, down the front steps, and toward his moving truck. (*Ibid.*) As O'Neal backed the victim's truck out of the driveway, the victim repeatedly yelled at O'Neal to stop the truck. (*Ibid.*) He pounded on the driver's window and tried to open the driver's door. (*Ibid.*) O'Neal held down the door lock and told the victim to "'get away,'" as he accelerated onto a highway. (*Ibid.*) The victim jumped into the truck bed in an effort to recover his property, but he soon surrendered the truck to the defendant. (*Ibid.*)

O'Neal argued that he committed a vehicle theft, not carjacking. He challenged the "immediate presence" element by relying on robbery principles. (*O'Neil*, *supra*, 56 Cal.App.4th p. 1131.) The court observed, "Just as 'a mere theft becomes robbery if the perpetrator, having gained possession of the property without use of force or fear, resorts to force or fear while carrying away the loot' [citation], so mere vehicle theft becomes carjacking if the perpetrator, having gained possession of the motor vehicle without use of force or fear, resorts to force or fear while driving off with the vehicle." (*Ibid.*) Here, even if Navarro had gained possession of Crowe's Jeep without use of force or fear, there is substantial evidence she used force or fear to keep possession of it.

2. *Instructional Error*

Using CALRIM No. 1650, the court instructed that a carjacking conviction required the People to prove the following elements beyond a reasonable doubt:

"1. The defendant took a motor vehicle that was not his or her own.

"2. The vehicle was taken from the immediate presence of a person who possessed the vehicle.

"3. The vehicle was taken against that person's will.

"4. The defendant used force or fear to take the vehicle or to prevent that person from resisting; AND

"5. When the defendant used force or fear to take the vehicle, he or she intended to deprive the person of the vehicle either temporarily or permanently."

6

In addition, the court gave two optional paragraphs. One defined "fear" as the "fear of injury to the person himself or herself or injury to the person's family or property or immediate . . . injury to someone else present during the incident or to that person's property." The other defined "immediate presence" by stating, "A vehicle is within a person's immediate presence if it is sufficiently within her control so that she could keep possession of it if not prevented by force or fear."

Navarro argued she did not use force or fear to take Crowe's Jeep. In light of her defense, and relying on robbery cases,[2] she requested the following pinpoint instruction:

"The use of force required in the crime of carjacking must be more than that which is necessary to accomplish the taking of the motor vehicle. A touching of another which is incidental to the commission of the taking does not satisfy the element of 'force' required in the crime of carjacking."

"The law says that the possession of the vehicle must be gained by force or fear. [Citation.] It is not enough that force or fear existed, The force or fear must be the means by which the taking was accomplished. [Citation.]"

After lengthy discussion with counsel, the court refused to give Navarro's pinpoint instruction for two reasons. First, unlike fear, "force" has no peculiar meaning under the carjacking statute. (*People v. Anderson* (1966) 64 Cal.2d 633, 640.) The court agreed with Navarro's carjacking/robbery analogy, but observed that she was "essentially asking the court to provide the jury further definition on, something our Supreme Court says just apply the plain simple common meaning."

---

[2] If Navarro submitted points and authorities in support of her application for the pinpoint instruction, they were not made part of the record. From the discussions between the court and counsel, we discern an effort to apply cases involving so-called *Estes* robberies. (*People v. Estes* (1983) 147 Cal.App.3d 23, 27-28.)

Second, the court feared Navarro's proposed instruction would be confusing to the jury and potentially prejudicial to both parties. Because the standard carjacking instructions are complete and adequate, there was no need to risk either confusion or prejudice.

Navarro asserts the court committed reversible error by refusing her pinpoint instruction. Not so.

In general, criminal defendants have a "'right to have the jury determine every material issue presented by the evidence.'" (*People v. Flood* (1998) 18 Cal.4th 470, 480-483; Cal. Const., art. VI, § 13.) Our Supreme Court has said that "'in appropriate circumstances' a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case . . . ." (*People v. Bolden* (2002) 29 Cal.4th 515, 558.) But "a trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation]." (*Ibid.*)

According to the Attorney General, Navarro's pinpoint instruction was duplicative of CALCRIM No. 1650's fourth paragraph, "The defendant used force or fear to take the vehicle or to prevent that person from resisting[.]" We agree, to some extent. However, as the trial court observed, parts of Navarro's pinpoint instruction are confusing at best. For example, the references in the pinpoint instruction to the "force" for carjacking being "more than that which is necessary to accomplish the taking," and a "touching" that is more than "incidental to the commission of the taking" muddled, rather than clarified these elements. Where, as here, the standard instruction is plain and adequate, there is no error in denying a duplicative and potentially confusing pinpoint instruction. (*People v. Garceau* (1993) 6 Cal.4th 140, 189, overruled on other grounds in *People v. Yeoman* (2003) 31 Cal.4th 93, 117-118.)

Moreover, Navarro's reliance on cases describing the taking aspect of robbery appears to be misplaced. (See *People v. Morales* (1975) 49 Cal.App.3d 134,

8

139 [force for robbery must be more than "just that quantum of force which is necessary to accomplish the mere seizing of the property"].)  While robbery and carjacking are similar, because both involve theft with the use of force or fear, the court rightly decided to avoid confusion with Navarro's choice of phrasing and legal concept mash-up.

Here, the court's carjacking instructions were adequate.  Navarro's pinpoint instruction was confusing and duplicative.  Thus, there was no error.

## DISPOSITION

The judgment is affirmed.

THOMPSON, J.

WE CONCUR:

O'LEARY, P. J.

ARONSON, J.